Before you proceed, I would tell you that Mary Medea is on this case. She's not able to be here today, but she will be aware of the arguments and will be able to hear the tapes of the arguments and will be a full member of participating in the deliberations. You may proceed. May I please record? Benjamin Wimmer of the State Appellate Defender's Office on behalf of the defendant Michael Costic. We can hear you just fine. You don't have to lean into the microphone at all. Thank you. Anyway, proceeding. This Court should reverse Mr. Costic's conviction for felony murder because the State did not prove beyond a reasonable doubt that when he performed the acts that caused the death of Treshaun Blakely, he was committing a felony that was distinct from and had an independent felonious purpose from the killing of Blakely itself. The State charged Mr. Costic with felony murder of Blakely predicated on, as it put it in the indictment, mob action that caused injury to Gerald Embry. At trial, the State presented evidence that Costic was involved in a brawl or fist fight on a crowded street corner in Peoria. The only witness to testify as to how that brawl started said that it began when Costic was attacked. The evidence showed that Costic left the brawl, went to his own home nearby, returned with his brother Marquis and a rifle, and fired into the crowd. The bullets hit Blakely and Embry, neither of whom had been initially present at the brawl or participating in it, and killed Blakely. This evidence was not sufficient to prove that Costic committed mob action that could serve as a legally permissible predicate to the felony murder of Mr. Blakely. As the Illinois Supreme Court has set forth in Davison and related cases cited in the briefs, a felony has to satisfy three conditions in order to serve as an appropriate predicate for a felony murder. First, the death of the victim has to be caused by acts committed during the felony itself. Second, the death can't be inherent in the acts constituting the felony. There needs to be a more distant cause-effect relationship. And finally, there needs to be an independent felonious purpose for the felony aside from just the death of the victim. So at trial in this case, the State overwhelmingly in its presentation of the case to the jury focused on the theory that it had explicitly put into the indictment, which was that the mob action consisted of Michael and Marquis firing a gun into the crowd on the street corner, disturbing the peace, and injuring Embry. The defense counsel actually submitted an instruction which would have prevented this theory from going to the jury, and the court denied the instruction. On appeal, the State abandons this theory for two clear reasons. First of all, Blakely's death was inherent in the shooting on the street corner, the shooting into the crowd, in that the shooting was the sole cause of Blakely's death, and the State relied upon the same evidence to prove both the killing of Blakely and the shooting into the crowd. How many shots were fired into the crowd? That's actually not clear. A lot of witnesses didn't know. I thought law enforcement recovered at least 20 bullets or casings. The number of shots isn't potentially limited to that. They might have missed some. So it could have been more than 20. Yes. So why we have two victims, one a victim of murder, one the victim of the mob action, and we have a number of shots that didn't strike anybody. I don't see why you think they're related. To me, they're separate felonious intent. Firing a gun into a crowd, striking Embry, mob action, killing the other gentleman, not the same purpose. Well, by getting into the subject of independent felonious purpose, you're going to an entirely different requirement. What I was talking about at the time was the inherency of the act in the underlying felony. So in that case, just before getting on to the question of independent felonious purpose, if the state had focused and specifically tried to prove to the jury that how many shots were fired, and most importantly, whether or not there was a part of the crime that occurred, essentially that the first shot didn't kill Blakely. If the state had taken that approach, at least the case O'Neill in the First District in 2016 suggests that that might be enough to say, okay, if you can show that something happened that would constitute a complete felony mob action before a bullet hits and kills Blakely, it's at least arguable that that would get rid of the inherency problem. But that wasn't done. The states made no effort just to establish when precisely Blakely was shot. As it puts it, a jury in closing argument, just logically he must be guilty of both killing Blakely and the underlying perpetrator. Didn't Embry testify to that, though? Embry said, I saw Blakely drop, and then he got hit. We know for a fact that... So we know it wasn't the same bullet. We know it wasn't the same bullet, but again, we don't know whether or not a crime was complete before Blakely was killed. If we know that, you know, obviously we have... If you're going for an issue of whether or not there was a one act, one crime violation, there's no question that you've got two acts established for that purpose. But in order to establish that the death of Blakely occurred during the mob action, and that his own death wasn't inherent in it, you need to be able to establish under the language in Davis and as suggested in O'Neill, that there was a felony that was complete before the act that, you know, essentially kills him. And the fact that Embry got shot later isn't enough to establish that. You need to be able to find out whether any part of the crime happened before Blakely dies. And this is actually entirely... This is only half of the problem with the state theory that the state presented the trial. The other half is that the crime lacked an independent felonious purpose from the killing of Blakely. Again, to go back to the O'Neill case from 2016 in the First District, a felony lacks an independent felonious purpose from the killing of the victim in alleged felony murder. If it's committed with a purpose that would be sufficient to satisfy subsection A1 or A2 of the murder statute, basically intentional, knowing, or strong probability murder. And here the evidence, as the state again argued at trial, is enough to establish that Kostick was acting at least with, you know, knowledge that he was creating a strong probability of death for everybody on the street by firing the gun. That was its theory. He wanted to terrorize the neighborhood and to do so by creating a strong probability of death. So consequently, on appeal, the state has moved away from this theory and has instead moved to a theory that it at least arguably presented to the jury in passing in the trial court, which was that the predicate mob action consisted of Kostick throwing punches or otherwise fighting in the brawl on the street before he was armed. But that's problematic because that's not what your client had noticed though. It's not what was alleged in the indictment. I actually don't, we haven't presented a claim that this was a fatal variance from the indictment. In the discovery, he was certainly aware of, you know, potential witnesses to this earlier fire. So you think that is a non-issue and I can let you move on then? Yeah, I mean, we certainly haven't presented it. All right. What the underlying sort of more basic problem is, is that the state couldn't, the evidence wasn't sufficient to show that Kostick performed, you know, committed that earlier mob action, to quote the felony murder statute, quote, in performing the acts that caused the death, unquote, of Blakely. That caused the death, as frequently happens, is interpreted to mean specifically proximate cause. As it was put in the Moore case in 2007, relying on Klebanowski from earlier, the purpose of the felony murder statute is to discourage forcible felonies by holding people accountable for the foreseeable consequences of their initial criminal acts. And when Kostick is engaging in those initial criminal acts here, under this theory, throwing punches on a street corner, it's not reasonably foreseeable consequence of that that he's going to shoot anybody because he's not armed. In order to become harmed, he has to leave the brawl, go to his house, and get his gun. And what's important about this is that the fact that he's out of the brawl and in a place of, you know, relative safety, where he's able to choose and think about his next move, means that the proximate causal chain back to the original participation in the fight has been broken. And again, how it was put in the Moore case is that when a person reaches a place of temporary safety, the proximate causal chain is broken. The escape from an initial felony is over. Something happens after that, even if it's motivated by the initial crime, even if it wouldn't have happened before the original crime, there's still no longer a proximate causal connection between the two things. And again, nothing in the evidence that was presented at the trial suggests that this was any different from Moore. Embry testified that when he was approaching the brawl, when it was still going on, he saw the Caustic brothers standing on their lawn outside of the brawl and didn't note anything otherwise particular about them. It's in a situation where, by that point, if Caustic is going back to kill people in the fight, it's not, you know, proximately caused by his initial participation in the fight, but it's caused by a supervening clause, which is his desire for revenge or his outreached pride. In its brief, the state argues that despite this, the brawl should still be considered a proper predicate felony, asserting that Caustic decided to get the gun while the initial brawl was still going on and already at that point had decided to shoot. There's two problems with this argument. First, there's no real evidence to that effect in the record. We don't know when he reached the decision to do that, whether it was during the fight or once he got back to his house. But more basically, even if he had decided during the initial fight to get the gun and shoot, that's not what the felony murder statute requires. The statute's text focuses explicitly on in committing the felony, are you committing the felony in performing the acts that caused the death, not are you performing a felony when you get the idea of doing something that could cause a death. Again, it's just approximate causing. Furthermore, not only is this argument contrary to the text of the statute and the approximate cause test set forth in case law, it would allow the state to abuse the felony murder statute because by speculating about when a defendant reached a decision or had an idea to engage in a certain course of behavior, it can effectively arbitrarily expand the range of time relevant to a felony murder inquiry. This could be done in two ways. The first, which is demonstrated in this case, is speculating that a person during the felony reached a decision to engage in a course of action really an arbitrary amount of time later, so long as you could argue that the later crime was in some way motivated by or brought about by, was but for, caused by, something that occurred during the initial crime. As here, you could have cases involving what would normally be considered just sort of revenge killings that would have to be charged as an intentional or knowing murder. The killing of witnesses to an initial crime. Even Moore itself, the 2007 case from the First District, would arguably be incorrectly decided under this standard. The defendant in Moore was charged with burglarizing a car, stealing a car basically. He drove it around and otherwise had it in his possession for a day. The next day, the police see him, activate the motor's lights, a high-speed chase ensues, a bystander is killed. The First District appellate court held that the high-speed chase and the death weren't proximately caused by the initial car burglary because he had had it for a full day and it was too distant for proximate cause. But there would be a non-laughable argument that, you know, he decided to keep the property, to obtain and keep this car for himself during the initial crime. And if he hadn't reached that decision, the later chase wouldn't have happened, resulting in a different result in Moore. And the sort of flexibility that this would grant the state is why the court has to hold the line in this case. At least on the facts that were actually presented at trial, that's not to say there aren't others that weren't presented, but there's no obvious second-degree murder defenses or other defenses to, you know, intentional knowing or strong probability murder here. But the rule the court applies in this case is going to control how states' attorneys decide to charge cases in the future and whether people who do have legitimate defenses, second-degree murder defenses, are going to have those defenses stripped of them. Briefly, and in the alternative, again, as noted in the brief, if this court were to conclude that the brawl was a proper predicate felony for felony murder and only the brawl, defense counsel at trial was ineffective in failing to have the jury instructed on an affirmative defense of self-defense to that crime. Again, just to clear this up, if this court were to, you know, hold that the shooting was a proper predicate felony, that ends the case. It's only if this court were to conclude that the shooting is not a proper predicate but the brawl is, then an effective assistance of counsel claim kicks in and this case should be reversed for a new trial. Well, how's the self-defense? Self-defense would come in because although self-defense isn't a straightforward defense to felony murder, but it can be presented as a defense to the underlying predicate felony. Now, if the underlying predicate felony here is firing a gun into a crowd of unarmed people, there's no question there's no self-defense claim there. If the underlying felony is throwing punches against people in a brawl on the street, the only witness to testify as to how that brawl started, Cynthia Williams testified that it began when, during a verbal argument, Caustic gets jumped, essentially people attack him. If Caustic responds to that by himself or with other people by throwing, you know, using non-legal force, punching back, that's use of force in defense of this person. That's legally permissible. And in an informal way, defense counsel actually argued this to the jury, stating, look, they said he got jumped. How can you call that disturbing the peace? You can call it disturbing the peace because without self-defense instruction, the jury can't realize that he doesn't have a duty to retreat from this situation rather than throw the punches. They can say that his staying there and fighting back breaches the peace. Consequently, failing to have the jury instructed in that was ineffective assistance of counsel. Unless this court has further questions, I believe I'm out of time anyway. Thank you, counsel. Counsel. This is not as complicated as counsel would suggest. The defendant was charged with mob action based upon the actions of this fight and the subsequent shooting. And then felony murder was predicated upon the mob action. Elmer Supreme Court in Davis, Davison, and this court in Tomato have all confirmed that mob action can be the basis for felony murder. The question is whether there was a separate felonious intent. The facts in this case were that the defendant was in a fight involving 50 to 70 people. That's clearly a mob action. He went and while that mob action was continuing, got a gun, came back and started firing 20 over 20 bullets or cases were recovered. So we know that it wasn't just a targeted shooting. It was some indiscriminate shooting. Also, there was indication of the directions. There was a ricochet marks and there was higher marks on the where the bullets ended up. So this isn't simply a targeted intent to kill. This is continuing of the mob action under the facts. As far as whether any part of the crime occurred before Blakely died. Well, clearly, is what counsel indicated is what should be considered. And clearly, that's what was happening. Mr. Costic was continuing on with his participation in the mob action. There is simply no separation as far as his actions. But as far as his felonious intent, his intent was to, as it says in the together, knowing to stir the peace by the use of force or violence. That's what mob action is. And that's what he did. As far as the additional claims in the mob action indictment, those were surpluses, as we cited in people, people versus Collins. You don't need to have that for a mob action indictment. So the indictment is fine. So. And the last one, O'Neill, is easily distinguishable. There's a van coming down the wrong way and the defendant takes the gun and starts shooting into the van coming down the wrong way. The street thinks it's full of gang members start shooting at it. That's not a separate mob action that's taking place. That is, as the court said in O'Neill, the cluster of shots that were directly related to the what was occurring. There was no separate felonious intent. It was clearly a separate felonious intent. OK, you're going to have to explain that to me or draw a picture. What do you think the separate felonious intent was? Separate felonious intent was to shoot randomly into the crowd to participate, continuous participation in the mob action. And that's the intent to commit mob action. Correct. Coming back with a gun. Correct. Well, and it should be into the crowd randomly. You don't have a felonious purpose of killing, which is a separate felonious intent for murder. This is felony murder. Correct. So his intent was once the mob action was completed, just as in Davis, you know, they had two people, they had a group of people beating this individual and the individual dies as a result of it. The court said that mob action, that mob action, the beating of the individual was sufficient. This is no different from that. That there was a action by the defendant that resulted in death. It wasn't the purpose wasn't or his intent wasn't that it was separate from. Do you assign any significance to the number of bullets? I assign significance that it goes towards the felonious intent of disturbing the peace by use of force because he was firing indiscriminately. Is there a series of mob actions here? With every shot? It wasn't charged that way. Mob action seems like more of a continuing action involving violence of multiple people. I suppose, in theory, you could charge multiple. But I'm not sure. I can't speculate. So are you abandoning your theory that the fist fight was the mob action? The fist fight was a continuation, really. And counsel indicated that we stated that he decided to kill during the fight. That's not what we said. We said that he decided he was going to leave and come back with the gun. So that's what he did. Because the fight was ongoing. He left and his theory that he went to a place of safety is not. This isn't withdrawal. He didn't withdraw from the mob action. It was a continuation of the mob action by going and coming back. It's an escalation of the fight. Correct. So he didn't take a break? No, this is not a break. This was not. This wasn't a revenge killing either. If I remember the record correctly, Mr. Embree and the victim were just bystanders, correct? They didn't participate in the fist fight. Correct. Mr. Embree testified that he was watching the fight. He saw Mr. Blakely, who was also watching. They knew each other. They knew each other. They started walking towards each other. Then he sees Blakely get hit and falls to the ground. Doesn't get up. Embree starts running. He gets hit by the bullet. The defendant is, quite frankly, lucky maybe to get more people. But as I said, he was indiscriminately shooting up in different directions as the physical evidence revealed. So he wasn't targeting anybody. So revenge towards an individual was just escalation of the mob action. As far as the self-defense claim goes, it's an affirmative defense. The defendant never admitted or made an admission that he participated. In fact, the defendant's counsel's argument was that he did not. The defense counsel's again disclosed an argument with Michael Foster was not the shooter, nor was he the brother's keeper, nor did he participate in a mob action, not guilty of the charges against him. In order to raise self-defense, he's got to make an admission that he did, in fact, do the crime. We'll also go into our brief about the elements of self-defense, and clearly bringing a gun in the escalation of a mob action, what was a fistfight, is excessive force. So even if the defense counsel had raised the self-defense, the trial judge would have properly rejected it. So there was no prejudice. And of course, the evidence against the defendant on all the remaining matters is overwhelming. Multiple witnesses testified that either he or his brother were the shooters. Multiple identified him as the shooter. He confessed to his girlfriend at the time that he did the shooting. So there's really no getting around the fact that he's guilty. So therefore, we would ask that this court affirm. Thank you, counsel. Not sure if I have any time left at all, but just briefly. How much time does he have? You have five minutes. Oh, okay. Well, I was expecting a lot less time than that. Talk slowly. I suppose I could. Anyway, the main point I just wanted to respond to, this wasn't brought up in the briefs, but a brief the counsel has suggested that because Kostic didn't testify himself at trial, there was no basis for the jury to be instructed on self-defense. It's contrary to law. In order to merit an instruction, you need enough evidence to permit a reasonable fact-finder to conclude that you did act in self-defense. Once you have that much evidence, instruction can be given. It's the state's ultimate burden of persuasion to prove beyond a reasonable doubt that you did not act in self-defense. Here, testimony from a bystander and the only witness to claim that he or she saw how the fight began, stating that he got jumped without anything like legal provocation to do that, would be sufficient to warrant the instruction going to the jury, and consequently, counsel's failure to do so was an effect of assistance of counsel. Aside from that, unless this Court has any further questions, I think that all the points have been addressed already. Thank you, counsel. Thank you. The court will take this matter under advisement and render a decision.